**Michael DAVIS**

v.

**STATE of Indiana.**

No. 784S266.

Supreme Court of Indiana.

Jan. 18, 1985.

David C. Field, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Michael Davis was convicted by a jury in the Lake Superior Court of class C felony burglary and also was found to be a habitual offender pursuant to Ind.Code § 35–50–2–8 (Burns 1979). The trial court accordingly sentenced him to thirty-eight years imprisonment. Appellant now directly appeals and raises the following three issues:

1. inadmissibility of certain exhibits;
2. sufficiency of the evidence; and
3. constitutionality of Indiana's habitual offender statute.

The facts adduced during trial show that during the early morning hours of July 7, 1983, Appellant, Kenneth Parker, David Smith and Ronald Edgeworth were under surveillance by certain officers of the Chicago Police Department who followed the four men from Chicago to a pawn shop in Gary. After the local police were contacted, the Chicago officers observed the group's activities in the vicinity of the shop. Officer Ed Winstead testified that he watched some of the four individuals climb up a telephone pole adjacent to the back of the pawn shop and walk "back and forth" on the roof for approximately two hours. Winstead specifically testified that he observed Appellant, with a "plastic bag on his head" walking outside the pawn shop and talking to someone. Officer Allen Szudarski testified that he observed Appellant on the roof of the pawn shop. Kenneth Parker, one of the four men, testified for the State pursuant to a plea agreement and stated that he and Appellant were on the roof of the pawn shop attempting to get inside to steal what they could. Specifically, Parker testified that he used a pick axe to dig a hole in the roof while Appellant acted as a "look-out." After working for two hours, Parker entered the building through the hole he had made and immediately triggered the inside alarm activated by an electric eye. The four men quickly abandoned the building, got into their nearby car and fled. A high speed chase ensued with many Chicago and local police units attempting to interdict the four men

in their car which eventually landed in a ditch. The four men subsequently were arrested at varying distances from where their car had stopped. When Appellant was arrested, a plastic shower cap was found in one of his pockets.

## I

Appellant first asserts that the trial court erred by admitting State's Exhibits 15, 18, 19, 20 and 21 into evidence during the habitual offender phase of his trial.

■ Exhibit 15 is a series of documents purporting to prove that Appellant was convicted of attempted burglary on May 5, 1982, in Illinois. As Appellant points out, however, Exhibit 15 is not comprised of original documents but rather is made up of photocopies. Notwithstanding whatever deficiencies Appellant claims there may be in Exhibit 15 according to Ind.Code § 34–1–18–7 (Burns 1973), we find no error here because the State properly proved that Appellant had committed two prior and unrelated felonies by its Exhibits 16 and 17. In fact, Exhibit 16 showed that Appellant, a/k/a "Alexander Faulkner otherwise called James Woods", was convicted of "unlawful use of weapons" in 1982 and was sentenced to three years imprisonment. Exhibit 17 showed that Appellant a/k/a "Alexander Faulkner" pleaded guilty to burglary in 1979 and was sentenced to a term of twelve months probation. This Court has held that evidence of convictions in excess of two prior felony offenses and one current felony offense is surplusage. *St. Mociers v. State*, (1984) Ind., 459 N.E.2d 26, *reh. denied; Harmer v. State*, (1983) Ind., 455 N.E.2d 1139; *Flick v. State*, (1983) Ind., 455 N.E.2d 339; *Hall v. State*, (1980) 273 Ind. 507, 405 N.E.2d 530, *reh. denied* [applying Ind.Code § 35–50–2–8 (Burns 1979)]. Accordingly, whatever error may have been created by the admission of Exhibit 15 was harmless.

■ Exhibits 18, 20 and 21 consist of reproduced transparencies of the Chicago Police Department fingerprint records of "Alexander Faulkner," the person convicted of the prior felonies indicated by Exhib-

its 15, 16 and 17. Exhibit 19 is a similar record for "James Woods." The fingerprints in Exhibits 18, 19, 20 and 21 were positively identified by Gary Midkiff, a duly qualified fingerprint examiner with the Lake County Police Department, as being the same as those of Appellant. Appellant now argues that the Exhibits were inadmissible because a sufficient chain of custody was not established. It is well-established that the purpose of establishing a chain of custody for seized evidence is to show a complete chain of possession from the original receiver to the final custodian and thus to lay a proper foundation connecting the evidence in question with the accused. *Williams v. State*, (1979) 270 Ind. 573, 387 N.E.2d 1317. The State, however, must present only evidence which strongly suggests the whereabouts of the evidence at all times. *Borom v. State*, (1984) Ind., 470 N.E.2d 712; *Burris v. State*, (1984) Ind., 465 N.E.2d 171, *reh. denied; Holt v. State*, (1980) 272 Ind. 544, 400 N.E.2d 130. Nonfungible items by their nature do not require the high degree of scrutiny that must be applied to fungible items. *Green v. State*, (1984) Ind., 461 N.E.2d 108; *Wilson v. State*, (1975) 263 Ind. 469, 333 N.E.2d 755, *reh. denied*. A nonfungible item therefore may be admitted into evidence based on testimony that the item is the one in question and is in a substantially unchanged position. *Borom, supra; Woodard v. State*, (1977) 267 Ind. 19, 366 N.E.2d 1160. Here, the evidence is self-authenticating. The fingerprint cards were prepared and maintained in the ordinary course of business by the Chicago Police Department. There is no hint of tampering. Appellant's chain of custody argument therefore is without merit.

■ Appellant also contends that Exhibits 18, 19, 20 and 21 should not have been admitted because they were not shown to be connected with State's Exhibits 15, 16 and 17. Although the fingerprint records were not physically attached to Exhibits 15, 16 and 17, each transparency is clearly marked to identify whose fingerprints were thereby recorded. In particular, Exhibits

18, 20 and 21 indicate name, date prints were taken, reason arrested, date of birth, sex, race, height, weight, eye color and hair color while Exhibit 19 shows name, date prints were taken, reason arrested, year of birth, sex, race, height and weight. Based on the information provided by these documents, it is a simple matter to ascertain the following: Exhibit 20 bears the same name, offense and date as the Grand Jury's true bill and indictment included in Exhibit 15; Exhibit 21 bears the same name, offense and date as the Grand Jury's true bill and indictment included in Exhibit 16; and Exhibit 18 bears the same name, offense and general date indicated by the "Certified Statement of Conviction" included in Exhibit 17. Exhibit 18 shows "date" as "16 Oct 79" which was one day before the date on which an information for burglary was filed against Appellant (a/k/a Alexander Faulkner) and Appellant entered a plea of guilty to burglary as indicated by the aforementioned "Certified Statement of Conviction." Exhibit 19 appears related to Exhibit 21 in that the fingerprints depicted in Exhibit 19 were taken exactly one week after the prints taken in Exhibit 21. Exhibit 19 bears the name and signature of James Woods aka Michael Davis whereas Exhibit 21 bears the name of "Alexander NMI [no middle initial] Faulkner." Each of Exhibits 18, 19, 20 and 21 depict the same fingerprints and are consistent with each other, the only differences representing a height differential of three inches which may be attributed to measurement problems and a not unusual weight differential of twenty-eight pounds. We now find that although the State could have done a much better job of presenting its habitual offender case against Appellant notwithstanding Appellant's various aliases, Exhibits 18, 19, 20 and 21 were shown to be connected with State's Exhibits 15, 16 and 17. The trial court's admission of Exhibits 18, 19, 20 and 21 was proper.

## II

■ Appellant next challenges the sufficiency of the evidence by which he was convicted of burglary and by which he was found to be a habitual offender. Specifically, Appellant alleges that the State "never proved that [he] performed any task so as to facilitate or help his alleged accomplices to break into [the pawn shop]." With regard to sufficiency of the evidence questions, this Court will neither reweigh the evidence nor determine the credibility of witnesses. If there is substantial evidence to support the jury's conclusion that Appellant was guilty beyond a reasonable doubt, the jury's verdict will not be disturbed. *Prine v. State*, (1983) Ind., 457 N.E.2d 217. Moreover, an accomplice is a competent witness and one may be convicted on the uncorroborated testimony of an accomplice. *Goodloe v. State*, (1982) Ind., 442 N.E.2d 346. Reviewing the evidence in the instant case, we find more than sufficient evidence of probative value to justify the jury's verdict.

## III

■ Appellant lastly challenges the constitutionality of Indiana's habitual offender statute, Ind.Code § 35–50–2–8 (Burns 1979). Appellant specifically alleges that the statute violates the Eighth Amendment of the United States Constitution in that it allows for the imposition of cruel and unusual punishment. We already have held that Indiana's habitual offender statute does not constitute cruel and unusual punishment or contravene the section of Indiana's Constitution which prescribes reformation as the basis of Indiana's penal code. *Erickson v. State*, (1982) Ind., 438 N.E.2d 269; *Traylor v. State*, (1981) Ind., 420 N.E.2d 887. In addition, we have held that Indiana's habitual offender statute does not violate the due process clauses of either the Indiana Constitution or the United States Constitution by allowing a prosecutor to exercise discretion in determining whether or not to bring a habitual offender charge in any given case. *Collins v. State*, (1981) 275 Ind. 86, 415 N.E.2d 46, *cert. denied* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851; *Eaton v. State*, (1980) 274 Ind. 73, 408 N.E.2d 1281. There is no error here.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and DEBRULER, HUNTER and PRENTICE, JJ., concur.