**Christopher TROTTER, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 48S00–8810–CR–878.

Supreme Court of Indiana.

Sept. 6, 1990.

Jeffrey A. Lockwood and Mitchell P. Chabraja, Schuyler, Eisele & Lockwood, Anderson, for appellant.

Linley E. Pearson, Atty. Gen. and Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Battery, a Class C felony; Attempted Murder, a Class A felony; four (4) counts of Criminal Confinement, Class B felonies; and Rioting, a Class D felony. The court sentenced appellant to five (5) years plus three (3) years for the battery; thirty (30) years plus twenty (20) for the attempted murder; ten (10) years plus (10) years for each of the four criminal confinements; and two (2) years plus two (2) years for rioting, with all sentences to be served consecutively for a total executed sentence of one hundred forty-two (142) years. This is a companion case to *Cole v. State* (1990), 559 N.E.2d 591.

The facts are: On February 1, 1985, appellant was an inmate at the Indiana Reformatory in Pendleton, Indiana. At that time, appellant was serving the last months of a four (4) year sentence for theft.

On that day, there were disturbances in the maximum restraining unit involving officers. Afterward, a shakedown was ordered to discover weapons or other contraband material held by the inmates. The inmates showed vocal resentment and plugged their toilets causing them to flood.

The officers then proceeded to empty the cells. The procedure followed was to require the inmate to back up to the bars to be handcuffed before the cell door was opened. Four inmates refused to comply with this order. Each was maced in an attempt to force them to comply. Three of the four complied and were removed from their cells. However, one inmate, Lincoln Love, even after being maced twice, refused to comply. It therefore became necessary for the officers to open his cell and forcefully restrain him in order to remove him. Love then was transported to the Captain's office.

Appellant and John Cole, who was also an inmate, armed themselves with knives and attempted to force entry into the Captain's office. However, they were unsuccessful. Appellant and Cole then went to another part of the building where they were confronted by Officers Delph and Richardson. They stabbed each of these officers. Officer Widner heard the disturbance and opened the door to investigate and was stabbed by appellant and Cole. Captain Sands sprayed them with mace; they fled, however, to the infirmary where they stabbed Officer Huston. Soon thereafter, other guards entered the infirmary and confronted appellant and Cole. Another altercation occurred and Officers Sheets and Melling were stabbed.

Appellant and Cole then fled into "J" cellblock where they took guards Millstead and Ingalls hostage and forced them to open the cell doors. The inmates forced Millstead, Ingalls, and Counselor Weist into cells. Eventually the hostages were released and the inmates surrendered.

■ Appellant contends the trial court erred by consolidating the two informations against him for trial. The trial court heard arguments on the State's motion to consolidate. Defense counsel took the position that appellant and Cole should not be tried together because there was not sufficient similarity between the rioting, confinement, and attempted murder charges to justify trying them together. Although appellant and Cole acted together in some of the conduct, the charges against four other defendants were not based on the same conduct. Separation of the other four inmates was granted; the trial court, however, ruled that appellant and Cole should be tried together.

Under the facts recited above, it is clear that appellant and Cole had engaged in "a series of acts connected together or constituting parts of a single scheme or plan." Ind.Code § 35-34-1-9(a)(2). Whether the charges were to be severed was a matter within the trial court's discretion. *Dudley v. State* (1985), Ind., 480 N.E.2d 881, *cert. denied*, —— U.S. ——, 109 S.Ct. 1655, 104 L.Ed.2d 169. We see no error in the ruling that the charges should be consolidated and the perpetrators tried together.

■ Appellant contends the trial court denied him effective assistance of counsel by limiting the time available for personal consultation before and after each day of trial. The record reveals that on August 6, 1985, appellant filed his motion to transfer to the Madison County Jail in order to facilitate trial preparations. The motion was denied. The motion was repeated on April 29, 1987, at which time appellant was incarcerated at the State Farm in Greencastle, Indiana, and the trial was to be held in Madison County, Indiana. The trial court again denied the motion. The court ordered that the appellant be transported to the Madison County Detention Center a half day prior to the trial for attorney consultation and that appellant and his attorney were entitled to one hour consultation prior to trial resuming each day and one hour after trial concluded each day.

Counsel filed objection arguing that the order gave him insufficient time to consult with appellant and to prepare for all of the listed State's witnesses. Counsel also objected to the daily transportation of appellant from Putnamville to Anderson, a round trip distance of approximately one hundred sixty miles. The court agreed to order appellant transported not only on the days of trial but also at other times when court was not in session including weekends.

Appellant cites *Herring v. New York* (1975), 422 U.S. 853, 95 S.Ct. 2550, 45

L.Ed.2d 593, for the proposition that the right to assistance of counsel means that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accordance with the traditions of the adversary fact-finding process guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution.

However, the case at bar is distinguishable from *Herring.* In *Herring,* a New York statute conferred upon every judge in a non-jury criminal trial the power to deny counsel any opportunity to make a summation of the evidence before the rendition of the judgment. At the conclusion of the case for the defense, counsel made a motion to dismiss which the trial court denied. Thereafter, defense counsel requested that he be "heard on the facts."

The United States Supreme Court, in deciding this issue, noted that the constitutional provision has not been given a narrow literalistic construction. The Supreme Court concluded that before the determination was made, the defendant had a right to be heard in summation of the evidence from the point of view most favorable to him and that denying him this right denied him the assistance of counsel guaranteed by the Constitution. In the case at bar, the issue centers upon the trial court's order limiting appellant's consultation with his counsel rather than denying counsel the opportunity to make a summation prior to a determination.

Appellant also cites *Geders v. United States* (1976), 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592. In that case, the Supreme Court granted certiorari to determine whether a trial court's order directing defendant not to consult his attorney during a regular overnight recess called while petitioner was on the stand as a witness and shortly before cross-examination was to begin, deprived him of the assistance of counsel in violation of the Sixth Amendment.

The United States Supreme Court in analyzing this issue noted that although the trial judge sequestered all witnesses for both the prosecution and defense, the petitioner in that case was not simply a witness, he was the defendant. In the Court's analysis of the order, the Court noted that it affected the petitioner in quite a different way from the way it would affect a nonparty witness who has no stake in the outcome of the trial.

The Court held that "an order preventing petitioner from consulting his counsel 'about anything' during a 17–hour overnight recess between his direct and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." In addition, the Court said, "We need not reach, and we do not deal with, limitations imposed in other circumstances." *Id.* at 91, 96 S.Ct. at 1337, 47 L.Ed.2d at 601. We would distinguish the case at bar from *Geders* in that the trial court's order here did not prevent appellant from consulting with counsel. It only limited the time to consult to one hour before and one hour after trial each day.

Of course, counsel and appellant had a full opportunity to consult during the day while the trial was in progress. Appellant also had the opportunity to consult with counsel on the days he was ordered transported to Anderson when the trial was not in session. We cannot say, under the circumstances of this case, that the court's order deprived appellant of effective assistance of counsel. *See Lucas v. State* (1986), Ind., 499 N.E.2d 1090; *Hurley v. State* (1983), Ind., 446 N.E.2d 1326.

■ Appellant contends the trial court denied him a fair trial by requiring leg shackles to be worn in the presence of the jury. During *voir dire* appellant and Cole both moved to be unshackled. In denying the request, the court explained:

THE COURT: Well, I don't want the jury to be prejudiced by the fact that they are in leg irons. I have authorized that they can remove the handcuffs. But I think that the leg irons are pretty discrete and, uh, once they, uh, and it is my policy to have the defendant's in the courtroom before the jury comes in and then have the jury leave before the defendants leave so that there would be no viewing by the jury of the fact that they

do have leg irons. So at this time we will leave the leg irons on.

During the presentation of evidence, appellant and his codefendant moved for a mistrial as a result of the presence of the leg irons and the fact that some members of the jury had seen them with the shackles on before trial had resumed.

■ The general rule precludes the presentation to the jury of a defendant in bonds or shackles. *Smith v. State* (1985), Ind., 475 N.E.2d 1139. However, there are exceptions to this general rule when the trial court, in its discretion, finds it necessary to prevent the escape of the prisoner, to protect those in the courtroom, or to maintain order. *Id.*

■ Appellant cites *Coates v. State* (1985), Ind.App., 487 N.E.2d 167 to support his position. However, in *Coates,* the defendant had been brought into court with a chain around his waist and handcuffs on his wrists which were fastened to the chain. This was far more obvious and more restrictive than the shackles on appellant and the codefendant. The fact that appellant may have been seen by some members of the jury at a time when it was obvious that he was shackled is not necessarily a ground for reversal. *Jenkins v. State* (1986), Ind., 492 N.E.2d 666. In a trial such as the case at bar, jurors would reasonably expect that any one in police custody would be restrained. *Malott v. State* (1985), Ind., 485 N.E.2d 879. We find no error in the trial court's order to have appellant and the codefendant shackled during trial.

■ Appellant claims the trial court erred in limiting his direct and cross-examination of Michael Richardson. Appellant contends he should have been allowed to cross-examine Richardson concerning psychological problems which may have arisen due to the disturbance at the reformatory and Richardson's emotional state on that day. The trial court ruled that Richardson's psychological problems went beyond the scope of the direct examination. The court properly ruled that Richardson's psychological condition prior to or during the encounter with Lincoln Love and any mone-

tary settlement the Department of Correction may have offered him to induce retirement following the incident was collateral to the issues in the case at bar.

Appellant argues he should have been allowed to go into this evidence because the beating of Lincoln Love may have "furnished the witness a motive for favoring the prosecution in his testimony." Appellant takes the position that extensive questioning of Richardson would have established the facts of the beating of Love, the third party appellant was protecting by committing the batteries charged. Again, the trial court correctly ruled that the beating of Love was a collateral matter by which no witness could be impeached.

■ It is true that under some circumstances third parties are entitled to come to the rescue of a person under attack. *See Kremer v. State* (1987), Ind., 514 N.E.2d 1068; *Davis v. State* (1983), Ind., 456 N.E.2d 405. As set out above, Lincoln Love had openly defied the officers to the point that it became necessary for them to enter his cell and physically subdue him in order to remove him and conduct a shakedown of the cell.

This certainly did not give appellant and his codefendant any right to intervene. This is especially true when the attempted intervention by appellant and the codefendant came after Lincoln Love had been removed from his cell and taken into the office. It was at that time they attempted to break into the office. When they committed the several stabbings, they were far removed from the presence of Lincoln Love and in no position to intervene in his behalf. The trial court's discretion in ruling on the admissibility of this evidence will not be reversed unless there is a showing that the trial court's discretion was manifestly abused and that the defendant was denied a fair trial. *Jackson v. State* (1986), Ind., 490 N.E.2d 1115.

Appellant's attempt to inject the issue of the defense of Lincoln Love is thin indeed when the evidence shows that they were inmates of a penal institution, that they were armed with knives, which they had

absolutely no right to possess, and that they continued to stab security officers in situations having no connection with the defense of Lincoln Love. We hold the trial court did not err in excluding the attempted direct or cross-examination.

■ Appellant also attempted to show that some of the injured guards filed a lawsuit in Federal Court against the reformatory. We agree with the trial court that such fact was entirely collateral to the issues of this case and had no bearing whatsoever on the guilt or innocence of appellant and his codefendant. *See Brown v. State* (1981), 275 Ind. 441, 417 N.E.2d 333.

■ Appellant also claims he was denied the right to elicit evidence concerning a billy club held by one of the officers in the office after Lincoln Love had been removed from his cell and taken to the office. Here again, the trial court correctly held that this was entirely collateral and was not proper cross-examination. The trial court correctly cited *Pearish v. State* (1976), 264 Ind. 339, 344 N.E.2d 296, to support its ruling.

■ Appellant contends the trial court erred in its imposition of his sentence. Appellant contends the reasons the trial court stated for both mitigating and aggravating circumstances are only conclusory and merely repeat the language found in Ind. Code § 35-38-1-7. The trial court in fact did find there was a possibility that appellant did act under strong provocation in his perception of a need to defend Lincoln Love and that his state of mind might have been influenced by perceived beatings in the past upon himself and other inmates.

As to aggravating circumstances, this record is replete with aggravation ranging from appellant's prior record and the circumstances of the riot as above outlined. The trial court's sentencing of appellant is abundantly supported by this record. *See Dickson v. State* (1988), Ind., 520 N.E.2d 101; *Deamus v. State* (1985), Ind., 479 N.E.2d 1319; *Beasley v. State* (1983), Ind., 445 N.E.2d 1372.

■ Appellant contends he was entitled to a separate trial due to his codefendant's perjured testimony. However, appellant does not specifically indicate where in the record it is shown his codefendant gave perjured testimony. Indiana Code § 35-34-1-12 allows a motion for a separate trial at the close of all the evidence if it is based upon a ground not previously known. In the case at bar, appellant does not show any resulting prejudice. In fact, it would appear that the State is the one prejudiced because the codefendant's testimony corroborated the beating of Lincoln Love. We find no abuse of the trial court's discretion in denying the separation.

■ Appellant contends it was error to allow a State's witness to testify about an alleged conversation between the codefendants which took place while they were being transported to the State Farm. The officer made a written report of the conversation he overheard between appellant and the codefendant. When he was called to the witness stand, he stated that he would have to refer to his written report to refresh his recollection on the details of the conversation. Appellant takes the position that he should not have been allowed to so testify. However, the law is clear in this state that a written memorandum may be used to refresh the recollection of a witness. *Gaunt v. State* (1983), Ind., 457 N.E.2d 211. The trial court did not err in permitting this testimony.

■ Appellant contends the trial court erred in excluding his Exhibit X, which was a negotiated settlement between the inmates and reformatory officials. Appellant contends this exhibit was relevant because it showed his knowledge as an inmate concerning ongoing crimes committed by the Pendleton Reformatory staff against inmates as well as his belief that Lincoln Love was beaten by staff members.

As previously set forth in this opinion, those matters were collateral to the issues in this case. We further would point out that the trial judge in fact did take into consideration appellant's perception of Lincoln Love's situation and that of other inmates as mitigating circumstances during

the sentencing procedure. We see no error in excluding this exhibit.

Appellant contends the trial court erred by admitting in evidence State's Exhibit No. 24, a knife. The exhibit was represented to be a knife used by the inmates during the stabbings. However, appellant objected on the ground that there was insufficient connection between the knife and the defendant and the commission of the offenses. It is true that ordinarily the State has a responsibility to show a proper chain of possession of an exhibit. *Davis v. State* (1985), Ind., 472 N.E.2d 922.

However, when an exhibit such as the knife in question is non-fungible in nature, the exhibit is not submitted to the high degree of scrutiny that must be applied to fungible items. When an item is readily identifiable, such as a knife, it may be admitted based upon the testimony of the witness that it is recognized and in a substantially unchanged state. *Id.* Norman Owens, the reformatory Superintendent, stated he believed the knife in question was handed to him by appellant. However, he was not certain that it was appellant who handed him the knife. Appellant then objected to the admission based on the lack of custody. Whether the knife in question was handed to the Superintendent by appellant or was acquired in some other manner, it nevertheless was demonstrated that both appellant and his codefendant wielded knives in the attack on officers and the knife in question was recovered upon their apprehension. We see no error in the court's decision to permit the knife in evidence.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.