## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2019, 10:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Trotter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 18, 2019

Court of Appeals Case No.
19A-CR-245

Appeal from the Madison Circuit Court

The Honorable Dennis Carroll, Special Judge

Trial Court Cause Nos.
48C06-8503-FB-951
48C06-8503-CF-950

**Bailey, Judge.**

# Case Summary

Christopher Trotter ("Trotter") obtained post-conviction relief and was resentenced on seven counts arising from a prison riot. He now appeals.

We affirm.

# Issues

Trotter raises the following issues:

I. Whether he is entitled to a statutory sentencing cap that was not in effect at the time he was originally sentenced.

II. Whether the court abused its sentencing discretion.

III. Whether the court imposed an inappropriate sentence.

# Facts and Procedural History

The Indiana Supreme Court recited the following facts on direct appeal:

On February 1, 1985, [Trotter] was an inmate at the Indiana Reformatory in Pendleton, Indiana. At that time, [Trotter] was serving the last months of a four (4) year sentence for theft.

On that day, there were disturbances in the maximum restraining unit involving officers. Afterward, a shakedown was ordered to discover weapons or other contraband material held by the inmates. The inmates showed vocal resentment and plugged their toilets causing them to flood. The officers then proceeded to empty the cells. The procedure followed was to require the

inmate to back up to the bars to be handcuffed before the cell door was opened. Four inmates refused to comply with this order. Each was maced in an attempt to force them to comply. Three of the four complied and were removed from their cells. However, one inmate, Lincoln Love, even after being maced twice, refused to comply. It therefore became necessary for the officers to open his cell and forcefully restrain him in order to remove him. Love then was transported to the Captain's office.

[Trotter] and John Cole, who was also an inmate, armed themselves with knives and attempted to force entry into the Captain's office. However, they were unsuccessful. [Trotter] and Cole then went to another part of the building where they were confronted by Officers Delph and Richardson. They stabbed each of these officers. Officer Widner heard the disturbance and opened the door to investigate and was stabbed by [Trotter] and Cole. Captain Sands sprayed them with mace; they fled, however, to the infirmary where they stabbed Officer Huston. Soon thereafter, other guards entered the infirmary and confronted [Trotter] and Cole. Another altercation occurred and Officers Sheets and Melling were stabbed.

[Trotter] and Cole then fled into "J" cellblock where they took guards Millstead and Ingalls hostage and forced them to open the cell doors. The inmates forced Millstead, Ingalls, and Counselor Weist into cells. Eventually the hostages were released and the inmates surrendered.

*Trotter v. State*, 559 N.E.2d 585, 586-87 (Ind. 1990). Trotter was convicted of several offenses and received an aggregate sentence of 142 years executed. *Id.* at 586. The Indiana Supreme Court affirmed the convictions on direct appeal. *See id.* at 591.

[5] Trotter sought post-conviction relief, contending he was deprived of effective assistance of counsel at sentencing. The post-conviction court granted relief, vacating Trotter's sentence and ordering "resentencing after a complete and accurate [presentence investigation report] is completed." App. Vol. III at 50.

[6] A sentencing hearing was conducted in January 2019. The court identified aggravators and mitigators, then imposed an aggregate sentence of 122 years executed. Specifically, in Cause No. 48C06-8503-CF-950, the court imposed forty-five years for Attempted Murder, a felony, and six years for Class C felony Battery Resulting in Serious Bodily Injury. Those sentences were to run consecutively for a total of fifty-one years. In Cause No. 48C06-8503-FB-951, the court imposed seventeen years for each of four counts of Class B felony Criminal Confinement and three years for Class D felony Rioting. The court ordered those sentences to run consecutively for a total of seventy-one years, running consecutive to the fifty-one-year sentence imposed in the other cause.

[7] Trotter now appeals.

# Discussion and Decision

## Sentencing Cap

[8] Trotter argues the court should have applied a statutory cap on consecutive sentences. *See* Ind. Code § 35-50-1-2 (limiting the aggregate length of consecutive sentences imposed for a single episode of criminal conduct). Trotter concedes the cap did not exist when he was first sentenced, but contends

the amendment applies under the doctrine of amelioration, which is a form of the rule of lenity. *See Robertson v. State*, 871 N.E.2d 280, 284 (Ind. 2007).

[9] We review questions of law *de novo*. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016).

> When construing a statute our primary goal is to ascertain the legislature's intent. To discern that intent, we look first to the statutory language itself and give effect to the plain and ordinary meaning of statutory terms. If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning.

*Id.* at 1193-94 (cleaned up).

[10] First, we observe that Trotter failed to raise the doctrine of amelioration at sentencing. He has therefore waived this issue. *See, e.g.*, *Turner v. State*, 870 N.E.2d 1083, 1085 (Ind. Ct. App. 2007) (identifying waiver of a claim under the doctrine of amelioration). Waiver notwithstanding, the general rule is that a defendant "shall be sentenced under the statute in force at the time the offense was committed." *State v. Alcorn*, 638 N.E.2d 1242, 1245 (Ind. 1994). Indeed, the time of the crime "is selected as an act of free will by the offender" and the penal consequences "are frozen as of that event." *Id.* Nevertheless, there is a limited exception to this rule. *Richards v. State*, 681 N.E.2d 208, 213 (Ind. 1997). That is, the doctrine of amelioration provides that "when the penalty for a crime is decreased by an ameliorative amendment enacted after the commission of the crime but prior to the defendant's sentencing, the defendant may take advantage of the ameliorative provisions." *Rowold v. State*, 629

N.E.2d 1285, 1288 (Ind. Ct. App. 1994). This doctrine applies to resentencing; however, it does not apply if the court is "merely correcting or modifying an existing sentence rather than resentencing." *Id.*; *compare, e.g.*, *Riffe v. State*, 675 N.E.2d 710, 713 (Ind. Ct. App. 1996) (finding the doctrine inapplicable where the court "merely corrected [an] existing sentence"), *trans. denied*, *with Martin v. State*, 714 N.E.2d 1140, 1143 (Ind. Ct. App. 1999) (applying the doctrine where the defendant "stood convicted of different crimes"—it "was not merely a correction of [the] existing sentences. It was a true resentencing.").

[11] Here, Trotter was resentenced. Thus, the doctrine is potentially available. Critically, however, we must not apply the more lenient statute if doing so is contrary to legislative intent. *See Turner*, 870 N.E.2d at 1086; *Cox v. State*, 38 N.E.3d 702, 703-04 (Ind. Ct. App. 2015) ("The doctrine is appropriately applied only if the legislature intended that the statute as amended apply to all persons for whom such application would be possible and constitutional.").

[12] Trotter directs us to caselaw from the 1990s, wherein courts concluded that the consecutive-sentences cap was ameliorative. *See, e.g.*, *Payne v. State*, 688 N.E.2d 164, 165 (Ind. 1997). However, since then, our legislature has substantially revised our criminal code, including through Public Law 168-2014. *See generally Rodriguez v. State*, 129 N.E.3d 789, 795 (Ind. 2019) (referring to the 2014 amendments as "a comprehensive bill that touched many aspects of the criminal code"). Indiana Code Section 1-1-5.5-21 directly addresses the doctrine of amelioration: "The general assembly does not intend the doctrine of amelioration . . . to apply to any SECTION of P.L. 158-2013 or HEA 1006-

2014." A footnote after "HEA 1006-2014," specifies that it was "[c]odified as P.L. 168-2014." *Id.* This footnoted public law—Public Law 168-2014— "CORRECTED AND AMENDED" Indiana Code Section 35-50-1-2. It modified the eligibility for the cap on consecutive sentences found in Indiana Code Section 35-50-1-2. *See* Pub. L. 168-2014, § 108 (removing references to felonies under the former "Class" system and updating to a "Level" system"). Importantly, Indiana Code Section 35-50-1-2—with its cap on consecutive sentences—appears in full within Public Law 168-2014. *See id.* Furthermore, Indiana Code Section 1-1-5.5-21 refers to the same public law and specifies that a "SECTION of . . . P.L. 168-2014 does not affect: (1) penalties incurred; crimes committed; or (3) proceedings begun; before the effective date of that SECTION." Public Law 168-2014 was effective on July 1, 2014.

[13] We must give Indiana Code Section 1-1-5.5-21 its plain meaning. This statute specifies that our legislature did not intend for the doctrine of amelioration to apply to "any SECTION" of Public Law 168-2014, and that a "SECTION" of this public law does not affect crimes committed before July 1, 2014. I.C. § 1-1-5.5-21. The pertinent sentencing cap appears in full within Section 108. Thus, the legislature did not intend for the doctrine of amelioration to apply.[1]

---

[1] Further, "statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme." *Sanders v. State*, 466 N.E.2d 424, 428 (Ind. 1984). Indiana Code Section 35-50-1-2—which sets forth the current cap on consecutive sentences—does not mention the former "class" system of felonies, under which Trotter was convicted. Rather, this statute speaks only to Levels 1 through 6. *See* I.C. § 35-50-1-2(d). Thus, consistent with the legislative intent articulated in Indiana Code Section 1-1-5.5-21, the current statute does not contemplate a cap for convictions obtained under the prior scheme. *See* I.C. § 35-50-1-2. In arguing the sentencing cap applies, Trotter declines

[14] Although Trotter waived argument regarding the doctrine of amelioration, the doctrine is inapplicable because it is inconsistent with legislative intent.[2]

## Sentencing Discretion

[15] Under the law when Trotter committed the offenses, a court was obligated to enter a sentencing statement that satisfied the following requirements:

> (1) it must identify all of the significant mitigating and aggravating circumstances, (2) it must state the specific reason why each circumstance is considered to be mitigating or aggravating, and (3) the court must evaluate and balance the mitigating circumstances against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating circumstances.

*Wall v. State*, 573 N.E.2d 890, 893 (Ind. 1991) (quoting *Henderson v. State*, 489 N.E.2d 68, 71-72 (Ind. 1986)). Moreover, a defendant could challenge the weight assigned to mitigators and aggravators. *See Covington v. State*, 842 N.E.2d 345, 348-49 (Ind. 2006) (reviewing this type of challenge). Upon such a challenge, an appellate court gives "great deference" to a court's determination of the proper weight assignable to mitigating and aggravating circumstances

---

to quote the current statute. He quotes from cases quoting an older version of the statute—a version that mentions classes of felonies. *See* Br. of Appellant at 18. Trotter does not cogently argue that an older version of the statute—as opposed to the version effective at resentencing—applied at his resentencing hearing. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring cogent reasoning supporting argument on each issue presented).

[2] Because of our resolution of this issue, we need not address the State's argument that a remedy curing a violation of the right to counsel should not produce a windfall.

and "will set aside the court's weighing only upon the showing of a manifest abuse of discretion." *Losch v. State*, 834 N.E.2d 1012, 1014 (Ind. 2005).

[16] Further, at the time of the offenses, Indiana had "presumptive" sentences. *See generally Smylie v. State*, 823 N.E.2d 679, 683 (Ind. 2005). These presumptive sentences apply at resentencing, except the court must follow the "current state of constitutional law." *Kline v. State*, 875 N.E.2d 435, 438 (Ind. Ct. App. 2007). In light of *Blakely v. Washington*, 543 U.S. 296 (2004)—a case interpreting the Sixth Amendment—a court may aggravate a sentence based on additional facts only if the additional facts are "(1) a prior conviction; (2) facts found by a jury beyond a reasonable doubt; (3) facts admitted by the defendant; or (4) facts found by the sentencing judge after the defendant has waived *Apprendi* rights[3] and consented to judicial factfinding." *Robertson*, 871 N.E.2d at 286.

[17] Here, the court found as follows:

> Court finds aggravation: 1) Defendant has some criminal history. (modest weight); 2) Multiple crimes and multiple victims. (substantial weight); 3) Crimes happened while defendant was incarcerated at the IDOC and to IDOC personnel. (substantial weight); Court finds mitigation: 1) Defendant was in the military service. (modest weight); 2) Defendant had a traumatic childhood. (modest weight); 3) Defendant accepts responsibility for his actions. (modest weight). Court finds aggravation outweighs mitigation.

---

[3] *See Apprendi v. New Jersey*, 530 U.S. 466 (2000).

App. Vol. III at 81, 83. The court imposed the following aggravated sentences:

- Forty-five years for Attempted Murder—five years above the presumptive sentence. *See* I.C. § 35-50-2-3 (1985) (allowing a court to add up to twenty years for aggravating circumstances).

- Seventeen years for each Class B felony—seven years above the presumptive sentence. *See* I.C. § 35-50-2-5 (1985) (allowing a court to add up to ten years for aggravating circumstances).

- Six years for the Class C felony—one year above the presumptive sentence. *See* I.C. § 35-50-2-6 (1985) (allowing a court to add up to three years for aggravating circumstances).

- Three years for the Class D felony—one year above the presumptive sentence. *See* I.C. § 35-50-2-7 (1985) (allowing a court to add up to two years for aggravating circumstances).

[18] Trotter argues the court erred by "believing that it was prohibited from giving substantial weight to circumstances and accomplishments" following the original sentencing. Br. of Appellant at 24. He directs us to these remarks:

> [T]his is not a modification hearing, this is a re-sentencing. So it's not appropriate for the Court to consider in any significant way . . . aggravators or mitigators that occurred after your original sentence. I think as I said you should receive some modest weight, that you've had no write-ups, . . . that you are . . . conduct free for a number of years. You've taken responsibility. . . . [Y]ou show remorse. Some of that . . . happened well into your sentence. In fact I noticed all those documents [related to positive changes] were dated '17 and

'18. They weren't dated ten (10) or fifteen (15) or twenty (20) years ago. So you have made some important changes but they didn't all happen quickly and immediately. In fact . . . this series of crimes [is] proof . . . that those didn't happen quickly and immediately. So . . . I will give some modest consideration . . . to your acceptance of responsibility, your remorsefulness, and your change of behavior. . . . [B]ut only in a modest way for the reasons that I have just outlined.

Tr. at 68.

[19] A resentencing court may consider conduct—good or bad—between the original sentencing date and the time of sentencing. *Ousley v. State*, 807 N.E.2d 758, 761 (Ind. Ct. App. 2004) (interpreting Post-Conviction Rule 1(10)(b) as implicitly allowing evidence of positive conduct after the original sentence). Trotter argues that the court misunderstood the law, thinking it was prohibited from giving substantial weight to his positive subsequent conduct. He argues that if the court understood the law, it would have given more weight to positive changes—not "minimal consideration." Br. of Appellant at 25.

[20] However, the above-quoted passage does not strike us as a misapprehension of law. Rather, the court was explaining to Trotter why it was not inclined to give substantial weight to changes that "didn't all happen quickly and immediately." Tr. at 68. The court contrasted the purpose of a resentencing hearing with the purpose of a modification hearing, the latter of which is designed to focus on post-sentencing matters. We discern no manifest abuse of discretion here.

[21] Trotter also argues that the court "failed to give substantial mitigating weight to his childhood and family dynamic of him protecting his brother and mother from his abusive father and the defense of others and the role it played in the circumstances of the case." Br. of Appellee at 25-26. Trotter claims the post-conviction court "found this dynamic to have substantial mitigating weight." *Id.* at 26. Yet, as the State points out, "the discretion to assign weight to each aggravator and mitigator lies with the resentencing court, not the post-conviction court." Br. of Appellee at 29. Moreover, we agree with the State that "the resentencing court fully explained its reasoning for assigning modest weight to Trotter's childhood and for disregarding the defense-of-others mitigator entirely." *Id.* As to Trotter's traumatic childhood, the court gave modest weight, observing that Trotter was an adult at the time of the offenses, had been in the military, and had already been out of his parents' home for several years. Tr. at 68. As to a protective instinct arising from a traumatic childhood, the court rejected the proffered mitigator, stating: "You simply do not get to insert yourself into what's happening with other inmates at an IDOC facility. . . . This alleged beating of another inmate and you were defending another, you were fearful. . . . [I]t's self-reported, it's self-serving." Tr. at 66.

[22] Trotter has not persuaded us of a manifest abuse of discretion in sentencing.

## Inappropriate Sentence

[23] Pursuant to Article 7 of the Indiana Constitution, as implemented by Indiana Appellate Rule 7(B), an appellate court "may revise a sentence authorized by

statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The appropriateness of a sentence turns on "myriad . . . factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In reviewing a sentence, we are not assessing whether a different sentence would be more appropriate. *See Helsley v. State*, 43 N.E.3d 225, 228 (Ind. 2015). Rather, we are assessing whether the imposed sentence is inappropriate. *See id.* As "sentencing is principally a discretionary function," *Cardwell*, 895 N.E.2d at 1222, we give considerable deference to the court's decision, *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). That deference "should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Id.* Ultimately, the principal role of review "is to attempt to leaven the outliers." *McCain v. State*, 88 N.E.3d 1066, 1067 (Ind. 2018) (per curiam).

[24] Regarding the offenses, Trotter received aggravated sentences that were within the range permitted by statute. *See* I.C. §§ 35-50-2-3, -5, -6 & -7 (1985). The sentences amounted to an aggregate term of 122 years in prison. As to the nature of the offenses, Trotter acknowledges he was convicted of "serious crimes." Br. of Appellant at 27. He makes no attempt to portray them in a positive light. Trotter instead argues that "the character of the offender is such that a reduction in terms is appropriate." *Id.* Trotter focuses on his traumatic

childhood, which involved protecting family members from his abusive father. Trotter also observes that he committed the offenses when he was relatively young—in his early twenties. He points out that he had prior military service. Moreover, Trotter notes that he has expressed remorse and "has engaged in many meaningful programs," with many achievements while in prison. *Id.*

[25] Trotter wisely avoids discussing the nature of the offenses, which were marked with brutality. For example, after stabbing Officer Sheets, Trotter ripped the knife out by "twist[ing] up and pull[ing] it out sideways." Tr. Dir. Appeal Vol. VIII at 43. Moreover, while holding Counselor Weist hostage, Trotter threatened sexual assault and said he would enjoy cutting Counselor Weist open. *Id.* at 145. Although Trotter had a traumatic childhood—and claims his involvement in the riot stemmed from a protective instinct developed in his youth—Trotter was nevertheless an adult who willingly participated in a brutal, prolonged riot that left many traumatized. Trotter, now in his fifties, has made positive changes while in the penal system, and we are mindful of that progress. However, having reviewed the matter, we are not persuaded that the nature of the offenses and the character of the offender warrant disturbing the sentence imposed by the court. We conclude that the sentence is not inappropriate.

# Conclusion

[26] Trotter waived his claim regarding the doctrine of amelioration, and he is otherwise not entitled to a statutory cap regarding consecutive sentences. The court did not abuse its sentencing discretion. The sentence is not inappropriate.

[27]     Affirmed.

Najam, J., and May, J., concur.