ATTORNEYS FOR APPELLANT
Douglas S. Walton
Walton Law Office
Evansville, Indiana

James E. Stoltz
Stoltz Law Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana
Indianapolis, Indiana

Brian Reitz
Andrew Kobe
Deputy Attorneys General
Indianapolis, Indiana

In the

Indiana Supreme Court

No. 63S00-1406-LW-440

CHRISTOPHER HELSLEY,                                    *Appellant (Defendant)*,

v.

STATE OF INDIANA,                                       *Appellee (Plaintiff)*.

Appeal from the Pike Circuit Court
The Honorable William E. Weikert, Judge
Cause No. 63C01-0104-CF-231

Direct Appeal

**September 24, 2015**

**Dickson, Justice.**

Defendant Christopher Helsley was convicted for the April 2001 murders of Brad Maxwell and Marsha Rainey in Pike County and sentenced to life imprisonment without parole. In this direct appeal following a second guilt phase trial, he challenges his sentence. We affirm.

The defendant's sentence of life imprisonment without parole gives this Court mandatory and exclusive jurisdiction over this appeal. Ind. Appellate Rule 4(A)(1)(a). Seeking a reduction

of his sentence to a term of years, the defendant makes two appellate claims. First, he requests this Court to exercise its right to review and revise his sentence under Indiana Appellate Rule 7(B). Second, he argues that the jury's weighing of aggravating and mitigating factors was an abuse of discretion.

In 2001, the defendant was an emergency medical technician for Pike County when he killed his coworkers Brad Maxwell and Marsha Rainey. The defendant fired multiple gunshots into the head and neck areas of both victims, and at least one gunshot wound to each of the victims was fired from close range, approximately one foot away. The bodies of Rainey and Maxwell were found in close proximity to one another, both seated in recliners in the living area of the building where emergency medical technicians wait for ambulance calls.[1] Rainey had a defensive wound on her hand, indicating that she was shot after Maxwell and was aware that she was about to be killed. The defendant was charged with two counts of murder, and the State sought life imprisonment without parole. On June 21, 2002, a jury found the defendant guilty as charged. Following the sentencing phase of the trial, the jury recommended a sentence of life imprisonment without parole, which the trial court entered. The defendant appealed to this Court, and we affirmed both the convictions and sentence. Helsley v. State, 809 N.E.2d 292, 294 (Ind. 2004). The defendant then sought post-conviction relief. In May 2013, the State and the defendant entered an agreement in which the defendant would receive a new sentencing hearing with the right to appeal that sentence in exchange for dropping his remaining post-conviction relief contentions. At the new sentencing hearing, the defendant and the State stipulated that the jury should be apprised of certain facts. After a brief description of the murders and procedure of the case through the original guilty verdict, the trial judge explained:

> At the sentencing phase of the first trial, the jury was entitled to consider any evidence previously presented to it in the guilt phase of that trial. In the original sentencing phase tried to the first jury, the defendant's lawyers presented one brief witness to present mitigation evidence. Defendant had other mitigation evidence he wanted to present. Christopher Helsley was entitled to present this evidence for consideration by the jury, but was

---

[1] Pike County emergency medical technicians ("EMTs") referred to this building as the "barn." Tr. at 31. The ambulance barn is where the "ambulances were kept . . . [and where the] living quarters were . . . [where the EMTs would] sleep at night . . . [and] [m]ake [their] meals." *Id.* Because they would spend an entire 24-hour shift there, the ambulance barn had a "[r]efrigerator, stove, sink, bathroom facilities, shower facilities, [and] beds." *Id.* at 32. Because of the 24-hour shifts, on site living arrangement, and the small size of the Pike County EMT group, which had only eight full-time EMTs, the EMTs were very familiar with one another and were involved in each other's lives. *Id.* at 34.

deprived due to mistake of his counsel. In order to know whether such evidence would have resulted in a different sentence, and in order to redress the failure of Christopher Helsley's original counsel to present such mitigation evidence, this case is being retried to you on the sole issue of whether Christopher Helsley should be sentenced to life without parole or term of years for the murders of Brad Maxwell and Marsha Rainey. . . . [T]he scope of this trial will be more limited than the original trial, as the murder convictions themselves remain intact and are not being challenged.

Tr. at 3–4. At the conclusion of the new sentencing hearing, the jury found that the State had proven the statutory aggravator beyond a reasonable doubt and that the aggravator outweighed the mitigating circumstances. It recommended a sentence of life imprisonment without parole, and the trial court sentenced the defendant accordingly. The defendant now appeals his sentence.

## 1. Sentence Review Under Appellate Rule 7

The defendant requests that this Court revise his sentence from life imprisonment without parole to a term of years under Indiana Appellate Rule 7(B).[2] Under Rule 7(B), such relief is available if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. App. R. 7(B).

To support his request for appellate sentence revision, the defendant advances three reasons: (a) his difficult childhood, (b) his lack of criminal history, and (c) his actions resulted from mental illness. He presents argument only on his lack of criminal history and his mental illness, alleging that he "suffered from borderline personality disorder, severe anxiety, and severe depression—serious and debilitating mental illnesses." Appellant's Br. at 13. In response, the State argues that the defendant's "execution-style double murder warrants a life imprisonment without parole sentence . . . . [because a] double murder is an aggravating circumstance of the 'highest order' and a single aggravating circumstance can outweigh even several mitigating circumstances." Appellee's Br. at 12. The State argues that this type of crime "is the exact type of crime contemplated by the legislature in enacting the life imprisonment without parole/death

---

[2] For the offense of Murder, a person may be sentenced to a fixed term of years between 45 and 65 years. Ind. Code § 35-50-2-3(a) (2000). The defendant was found guilty of committing two murders in this case, and the sentences, if reduced to a term of years, could be imposed concurrently or consecutively. Ind. Code § 35-50-1-2(c).

3

penalty statute," *id*. at 15, and that the defendant's lack of prior criminal history and mental illness were "not entitled to significant weight." *Id.* at 16, 18.

"[T]he question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." King v. State, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original), *trans. not sought*. "Our authority to review and revise a criminal sentence requires that we first give 'due consideration of the trial court's decision.'" Stephenson v. State, 29 N.E.3d 111, 122 (Ind. 2015) (citing Ind. App. R. 7(B)). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). As we recently explained in Stephenson, "[s]uch deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." 29 N.E.3d at 122.

The testimony at the sentencing phase trial included the defendant's expert witness, a clinical neuropsychologist, who opined that the defendant was in a dissociative state[3] at the time of the murders but also stated that the defendant was a "heightened risk" to be "faking all of this." Tr. at 209. The expert witness stated, "My assumption has been that, as I mentioned earlier, that, number one, I do believe he was in a dissociative state, but number two, I do also believe that he was making stuff up." Tr. at 227–28. The expert's opinion was based on statements made by the defendant, but much of the information the defendant told him was not corroborated by any other source. The expert testified that: "If everybody and their brother says Chris was loved and never had a problem, and there was never any abuse of any type, [then] you [should] feel free to be very skeptical of this as a contributing factor." Tr. at 239. Other character wit-

---

[3] The defendant's expert witness testified that he believed the defendant occasionally had dissociative amnesia, meaning the defendant would occasionally become unaware of what he was doing or why. The expert witness further testified that if an individual has a "borderline personality disorder", and experiences a potential loss (e.g., as here, a loss of his marriage and his job), then such an individual "is really not capable of managing the emotions that get generated or triggered. And so they are much more likely to react in unconstrained ways." Tr. at 213. The expert also opined that, in a state of disassociative amnesia, a person is "not going to remember what [the person] did and why [the person] did it." Tr. at 210.

nesses at the sentencing hearing testified that they never remembered the defendant being physically abused and much of their testimony failed to corroborate what the defendant had told the expert witness about the defendant's alleged childhood problems and abuse. The expert specifically warned that "you [should] feel free to be very skeptical of [his childhood and mental health] as a contributing factor" if the defendant's representations are refuted by the testimony of friends and family. *Id.* There was no support at the guilt phase trial for the defendant's reports to his expert. *Id.* at 239. Several character witnesses testified that the defendant's mother loved him and was very protective of him and that the defendant spent a lot of his childhood with his grandparents, who loved him and helped raise him. Additionally, the expert testified:

> My experience in situations like this is that prison oftentimes stabilizes unstable personalitites. Because they're taken care of. And everything is routine, and they know that they can only go so far and no farther and can't get into any more trouble. And so there are certain individuals that do thrive, actually, and do better in prison than they do in the outside world. My very strong sense is that Chris might be one of those guys. He's done, from what I gather, pretty well in . . . different aspects of his prison life.

Tr. at 241.

The defendant's brief in this appeal does not attempt to connect his mental illnesses to either his character or the nature of the offense, and his argument does not separately address these two factors to be considered under Rule 7(B). We observe that a claim of mental illness may be the basis for a guilt phase claim of insanity or inviting a verdict of guilty but mentally ill. Since this appeal involves only the resentencing proceeding after remand, the record before us indicates only that such issues were not before the guilt phase jury. We cannot foreclose the possibility that the role of a defendant's mental illness in the commission of a crime may, in exceptional and extraordinary circumstances, be considered in a Rule 7(B) appellate sentence review in evaluating the nature of the offense. The present case, however, does not warrant such consideration.

In this case, the offense was a cold, calculated double murder of two coworkers without provocation. The defendant's actions did not show restraint or a lack of brutality, and there was no evidence that either murder showed any regard for human life. Both of the victims received at least one gunshot wound from close range, and they both suffered all of their multiple gunshot

wounds to their head and neck areas. Each inflicted wound was life threatening or death inducing independent of the other gunshot wounds. We do not find that the defendant's claim of mental illness diminishes the gravity of his conduct in committing these murders. In addition, notwithstanding the alleged troubled childhood, mental illnesses, and lack of criminal history, consideration of the defendant's character does not warrant a sentence revision.

With respect to the defendant's request for Rule 7(B) sentence revision, we find that the nature of the offense and the character of the defendant do not present a sufficiently compelling basis to override the decision of the jury and the trial court.

## 2. Review of the Jury's Sentencing Decision

Alternatively, the defendant briefly argues that the jury's decision to place more weight on the aggravating circumstance than the mitigating circumstances constituted an abuse of discretion. We understand the defendant to argue that his difficult childhood, mental illnesses, lack of prior criminal history, lack of violent behavior, lack of motive for this crime, and remorse, while not able to absolve him of responsibility for the murders, outweigh the single aggravating circumstance presented, making "[t]he jury's verdict . . . an abuse of discretion." Appellant's Br. at 14. In response, the State argues that abuse of discretion "is an improper standard of review for a jury's consideration of mitigation evidence" because mitigating circumstances are not required to be found or weighed unanimously by the jury, and the "weighing of aggravating and mitigating circumstances is not a factual determination." Appellee's Br. at 20 n.3. The State argues that there is no standard for challenging the jury's weighing process but emphasizes that "double murder is an aggravating circumstance of the 'highest order' and a single aggravating circumstance can outweigh even several mitigating circumstances." *Id.* at 12. Finally, the State argues that the defendant's alleged mitigating circumstances are not as strong as the defendant suggests and are contradicted by other evidence, and thus the sentence should be affirmed.

The defendant does not challenge the jury's finding of the statutory aggravator—that he committed or was convicted of another murder. *See* Ind. Code § 35-50-2-9(b)(7)-(8). The defendant also does not argue that the jury received improper instructions, made a mistake by not

6

specifically identifying which mitigating circumstances it considered, or failed to state that it found the statutory aggravator outweighed the mitigating circumstances. Instead, the defendant asks "this Court to exercise review of the jury's balancing process [of the aggravating and mitigating circumstances]." Appellant's Br. at 14. He argues that in a case where the sentence is life imprisonment without parole, a jury's balancing of aggravating and mitigating circumstances is subject to an abuse of discretion standard of appellate review. We disagree.

The jury verdict in this case declared, "We, the Jury, find that the charged aggravating circumstances that exist outweigh any mitigating circumstances herein." Tr. at 324. In a case involving the death penalty or a sentence of life imprisonment without parole, once a statutory aggravator is found by a jury beyond a reasonable doubt, "Indiana . . . places the weighing process [of any aggravating and/or mitigating circumstances] in the hands of the jury" to recommend a punishment. Ritchie v. State, 809 N.E.2d 258, 268 (Ind. 2004). The exercise of such judgment "is not capable of evaluation beyond a reasonable doubt, and our statute *properly omits any standard by which it is to be measured*." *Id*. (emphasis added). Instead, the statute simply states that "[b]efore a sentence may be imposed under this section, the jury . . . must find that . . . any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances." Indiana Code § 35-50-2-9(l). Determining the weight to be given aggravating and mitigating circumstances is a "balancing process" within the purview of the jury, Bivins v. State, 642 N.E.2d 928, 946 (Ind. 1994), *quoted by* McManus v. State, 814 N.E.2d 253, 256 (Ind. 2004), and the jury is not required "to list mitigating circumstances or even provide information about its consideration of alleged mitigators." Weisheit v. State, 26 N.E.3d 3, 20 (Ind. 2015). Because the defendant's jury did not provide reasons for its sentence determination, there is no basis upon which we can evaluate the jury's weighing of the evidence and balancing of the mitigating circumstances against the aggravating circumstance. In light of the confidentiality and finality of jury deliberations, we find nonjusticiable the defendant's claim that the jury's weighing and balancing of aggravating and mitigating factors was an abuse of discretion. *See* Ward v. State, 903 N.E.2d 946, 960-61 (Ind. 2009).

**Conclusion**

7

Finding that (a) the nature of the offense and the defendant's character do not warrant a revision of his sentence under Indiana Appellate Rule 7(B) and (b) the jury's weighing and balancing of aggravating and mitigating circumstances is not subject to appellate review, we affirm the sentence of life imprisonment without parole.


Rush, C.J., and Rucker, David, and Massa, JJ., concur.