## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 23 2016, 9:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael W.L. Deweese,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 23, 2016

Court of Appeals Case No.
53A01-1606-CR-1310

Appeal from the Monroe Circuit Court.
The Honorable Marc R. Kellams, Judge.
Cause No. 53C02-1411-F1-1065

**Friedlander, Senior Judge**

[1] Michael W.L. Deweese pleaded guilty and now appeals the 109.5-year sentence the trial court imposed upon his convictions of attempted murder, a Level 1 felony; seven counts of rape, all Level 1 felonies; burglary, a Level 2 felony; two counts of armed robbery, both Level 3 felonies; two counts of criminal

confinement, both Level 3 felonies; and resisting law enforcement, a Level 6 felony. We affirm in part, reverse in part, and remand with instructions.

[2] On the evening of November 8, 2014, Deweese and several companions went to Bloomington, Indiana to attend a party. Over the course of the night, they visited several locations, drinking alcohol and consuming controlled substances along the way. At 4:30 a.m. on November 9, 2014, Deweese and his accomplice Jaylan Glazebrook, who were both armed with handguns, broke into an apartment, intending to commit theft.[1] Three women were present: A.M.R., S.R.E., and K.M.H.

[3] Deweese found a laptop computer in the living room and placed it outside, intending to put it in the car later. One of the men found A.M.R. in a bedroom and forced her into S.R.E.'s bedroom, where the other man was waiting. Next, Deweese and Glazebrook forced A.M.R. and S.R.E. to submit to numerous sexual acts at gunpoint as Deweese and Glazebrook threatened to kill them. Over the course of up to thirty minutes, Deweese put his penis in S.R.E.'s mouth, vagina, and anus. Glazebrook put his fingers in A.M.R.'s vagina and his penis in A.M.R.'s mouth, vagina and anus.

[4] K.M.H. was in another bedroom, heard the sounds of her roommates being assaulted, and called 911. Officer William Abram was dispatched to

---

[1] During trial court proceedings, the parties disputed whether a third person, Jesse Benti-Torres, briefly entered the apartment with Deweese and Glazebrook or merely waited outside in the car. We take note of the dispute but need not resolve it in this appeal.

investigate. He knocked on the partially ajar front door and announced that he was a police officer. When Officer Abram looked into the apartment, he saw a man, later identified as Deweese, standing in a bedroom doorway pulling up his pants. Deweese went back into the bedroom. He or Glazebrook opened a bedroom window to flee, and Glazebrook fired several shots before they climbed out. Officer Abram circled around the outside of the apartment building and saw Deweese and Glazebrook running away from the window. Glazebrook fired a shot at Officer Abram, who fired several shots in return.

[5] Later, the police captured Deweese and Glazebrook in separate locations in Bloomington. Each of them had gunshot wounds. Glazebrook was carrying S.R.E.'s cell phone and other property. Deweese initially denied any involvement in the crimes. He instead told the officers he had been walking by the apartment building when he saw someone climb out of the victims' window and shoot at him.

[6] Meanwhile, other officers entered the apartment to check on the victims. Subsequent investigation revealed that Deweese and Glazebrook's DNA was found on the victims.

[7] The State charged Deweese with several offenses. He was charged as an accomplice for some of the offenses. We summarize them as follows:

> Count I, attempted murder, a Level 1 felony, for the shot at Officer Abram;
> Count II, rape, a Level 1 felony, for an act against A.M.R.;
> Count III, rape, a Level 1 felony, for an act against A.M.R.;

Count IV, rape, a Level 1 felony, for an act against A.M.R.;

Count V, rape, a Level 1 felony, for an act against A.M.R.;

Count VI, rape, a Level 1 felony, for an act against S.R.E.;

Count VII, rape, a Level 1 felony, for an act against S.R.E.;

Count VIII, rape, a Level 1 felony, for an act against S.R.E;

Count IX, burglary, a Level 2 felony, for breaking and entering the apartment;

Count X, armed robbery, a Level 3 felony, for an act against A.M.R.;

Count XI, armed robbery, a Level 3 felony, for an act against S.R.E.;

Count XII, criminal confinement, a Level 3 felony, for an act against K.M.H.;

Count XIII, criminal confinement, a Level 3 felony, for an act against A.M.R.;

Count XIV, criminal confinement, a Level 3 felony, for an act against S.R.E.; and

Count XV, resisting law enforcement, a Level 6 felony, for an act involving Officer Abram.

[8] In addition, the State filed a notice of intent to seek a sentencing enhancement for Deweese's use of a firearm while committing criminal confinement.

[9] Deweese and the State negotiated a plea bargain in which Deweese agreed to plead guilty to all charges except Count XII, criminal confinement of K.M.H. In exchange, the State agreed to request dismissal of Count XII. In addition, pursuant to the agreement, the trial court would have the discretion to determine whether the sentences for Counts I (attempted murder), VI (rape), VII (rape), VIII (rape), IX (burglary), X (armed robbery) and XIV (criminal

confinement) would be served consecutively or concurrently, but the sentences for the remaining counts would be served concurrently with each other and the sentences for Counts I, VI, VII, VIII, IX, X, and XIV.

[10] The trial court accepted the plea agreement and entered a judgment of conviction on all counts except Count XII, which the court dismissed. The court imposed an aggregate sentence of 109.5 years, which includes fifteen years for the sentence enhancement related to Deweese's use of a firearm. This appeal followed.

[11] Deweese first contends the trial court erroneously exceeded the maximum possible sentence for several of his convictions. The State agrees. At the time Deweese committed his offenses, the maximum sentence for a Level 3 felony was sixteen years. Ind. Code § 35-50-2-5 (2014). The maximum sentence for a Level 6 felony was two and a half years. Ind. Code § 35-50-2-7 (2014). The trial court imposed sentences of thirty years each for counts XI (armed robbery, a Level 3 felony), XIII (criminal confinement, a Level 3 felony), and Count XV (resisting law enforcement, a Level 6 felony). We reverse that portion of the trial court's judgment and remand with instructions to resentence Deweese on those three counts to terms within the statutory maximums. Reduction of Deweese's sentences for those three convictions will not change his overall sentence because Deweese is serving those sentences concurrently with other sentences.

[12] Next, Deweese claims the trial court erred in the course of imposing the firearm sentencing enhancement and asks that the enhancement be vacated. The State contends that the Court should remand the case to the trial court to clarify how it intended to apply the enhancement.

[13] When a defendant uses a firearm to commit certain felonies such as criminal confinement, the State may seek to add a fixed term of imprisonment to the sentence. Ind. Code § 35-50-2-11 (2014). If the State proves beyond a reasonable doubt that the defendant knowingly or intentionally used a firearm to commit one of the felonies specified by statute, the trial court may add an additional fixed term of imprisonment of between five and twenty years. *Id.*

[14] The trial court noted in its sentencing order that Deweese was sentenced to fifteen years for the sentencing enhancement but did not explain to which conviction the enhancement was intended to apply. In the abstract of judgment, the court clarified that the sentencing enhancement was "included in total commitment time in Count XIV." Appellant's App. p. 129. Count XIV is a charge of criminal confinement related to S.R.E., for which the trial court imposed twelve years in the sentencing order and then, in the abstract of judgment, listed the total sentence for that conviction as twenty-seven years, further demonstrating that it had added the fifteen-year enhancement to the twelve-year sentence.

[15] Uncertainty arises because, according to the sentencing order, the court ordered that the enhanced twenty-seven-year sentence on Count XIV would be served

concurrently with Deweese's thirty-year sentences for Counts VI, VII, and VIII (rapes), thus resulting in no overall increase in the total sentence. Despite the court's order, the trial court also expressed an intent that the fifteen-year enhancement should be added to the total sentence for the underlying convictions, resulting in the 109.5-year term. We are remanding the case to the trial court for correction of the sentences identified above, and so the trial court must also clarify on remand how the sentencing enhancement is intended to apply to the total sentence. We express no opinion as to how the court should recalculate Deweese's sentence.

[16] Finally, Deweese argues his aggregate sentence of 109.5 years is inappropriate and should be reduced. The State responds that the sentence is appropriate due to the nature of his crimes and character.

[17] In general, sentencing decisions are left to the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). Even when a court has acted within its discretion, this Court may review and revise sentences pursuant to Article seven, section six of the Indiana Constitution. The constitutional authority to review and revise sentences is implemented through Indiana Appellate Rule 7(B), which states: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[18] When reviewing a sentence pursuant to Appellate Rule 7(B), an appellate court's principal role "is to attempt to leaven the outliers." *Bess v. State*, 58 N.E.3d 174, 175 (Ind. 2016). The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *Helsley v. State*, 43 N.E.3d 225 (Ind. 2015). An appellant must persuade the court that his or her sentence is inappropriate. *Rice v. State*, 6 N.E.3d 940 (Ind. 2014). Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Brown v. State*, 52 N.E.3d 945 (Ind. Ct. App. 2016), *trans. denied*.

[19] In this case, the trial court imposed an increased sentence on each count, determining that aggravating circumstances outweighed mitigating circumstances. For purposes of brevity and clarity, the consecutive sentences are: thirty years on Count I (attempted murder of Officer Abram); thirty years on Count VI (rape of S.R.E.); twenty-two and a half years on Count IX (burglary); and twelve years on Count X (armed robbery of A.M.R.), for ninety-four and a half years, plus the fifteen-year sentencing enhancement, for a total of 109.5 years. The remaining sentences are to be served concurrently with the ones listed above.

[20] The nature of the offenses is indisputably brutal. Deweese and Glazebrook armed themselves, broke into a dwelling at night, sexually assaulted the sleeping occupants in multiple ways over a span of thirty minutes, and took their property. Deweese and Glazebrook threatened the women with death if

they resisted or looked at their faces. When Officer Abram arrived at the scene, Glazebrook shot at the officer as he and Deweese attempted to flee.

[21] Deweese had multiple opportunities to end his criminal conduct and separate from his companions, but he instead chose to commit ever more serious offenses, going from burglary to armed robbery and rapes to attempted murder. Deweese's crime spree was ended by his capture, not by his choice.

[22] Deweese claims he did not physically harm the victims above and beyond what was inherent in committing his crimes. Any lack of physical injury is more than offset by the severe, long-term psychological trauma S.R.E. and A.M.R. are experiencing. S.R.E. thought she and A.M.R. were going to die when Glazebrook fired several shots as he climbed out the bedroom window. Over a year after the attack, S.R.E. suffered from frequent nightmares. She had to change jobs because her old one required her to work alone at night, and she was too frightened. She went to the gun range to work toward earning a concealed carry permit, and the sound of gunshots brought back traumatic memories, resulting in her being unable to hold the gun. At night, S.R.E. feels afraid to leave her locked bedroom, even to use the bathroom, unless someone else is home. A.M.R. also experiences nightmares. She is unable to live alone, and, upon entering a room, always looks for an exit and a place to hide. A.M.R. remains terrified of the dark and of loud sounds.

[23] Turning to the character of the offender, Deweese was not quite twenty-one years of age at sentencing. He had amassed one prior felony conviction and

three misdemeanor convictions in his short adult life. He was convicted of dealing in marijuana, a class D felony, and resisting law enforcement, operating a motor vehicle while intoxicated, and driving while suspended, all Class A misdemeanors. While these crimes are not as severe as his current offenses, it speaks volumes about Deweese's character that he was unable to go more than a year without committing new offenses. In addition, he was placed on probation twice and violated the conditions of probation both times. Finally, while Deweese was incarcerated pending trial, he violated jail rules on multiple occasions.

[24] Deweese points out that he pleaded guilty, thereby sparing the victims the hardship of testifying. He further claims he did not receive a substantial benefit from the plea because he has effectively received a life sentence. A guilty plea is not necessarily a mitigating factor where the evidence against the defendant is so strong that the decision to plead guilty is merely pragmatic. *Amalfitano v. State*, 956 N.E.2d 208 (Ind. Ct. App. 2011), *trans. denied*. In this case, there were multiple eyewitnesses and Deweese's DNA was found on one of the victims. In addition, he had been shot by Officer Abram as he attempted to flee and had a gunshot wound when he was captured.

[25] Deweese further argues his troubled childhood is worthy of consideration because his father was completely absent and his mother was addicted to drugs, which resulted in him being raised by his grandmother. Evidence of a difficult childhood warrants little, if any, mitigating weight. *Ritchie v. State*, 875 N.E.2d 706 (Ind. 2007). In addition, the evidence that Deweese had a troubled

childhood is mixed. He submitted to the trial court a sentencing memorandum in which he stated he was exposed to significant family dysfunction as a child. On the other hand, Deweese stated during the presentence investigation process that he was adequately cared for by his grandmother and had love and support in his youth.

[26] Considering the callous nature of the offenses, and the mixed (at best) evidence of Deweese's character, he has failed to demonstrate that his sentence is inappropriate.[2] *See Lacey v. State*, 755 N.E.2d 576 (Ind. 2001) (sentence arising from home invasion did not merit reduction under prior sentencing review standard; defendant's youth and relatively brief criminal history were offset by brutal nature of crimes).

[27] For the reasons stated above, we affirm the judgment of the trial court in part, reverse in part, and remand with instructions to correct and clarify Deweese's sentence as discussed above.

[28] Judgment affirmed in part, reversed in part, and remanded.

Baker, J., and Barnes, J., concur.

---

[2] Our analysis as to the appropriateness of the sentence applies with equal force even if the trial court on remand reduces Deweese's overall sentence in the process of correcting the sentencing order.