## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.



IN THE

# Court of Appeals of Indiana



FILED

Jun 25 2024, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Ryan S. Crum,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 25, 2024

Court of Appeals Case No.
23A-CR-1498

Appeal from the Washington Circuit Court

The Honorable Larry W. Medlock, Judge

Trial Court Cause No.
88C01-2108-CM-594

---

**Memorandum Decision by Judge Kenworthy**
Judges Bailey and Vaidik concur.

**Kenworthy, Judge.**

## Case Summary

[1] Ryan S. Crum appeals his twelve-year aggregate sentence imposed after a jury found him guilty of twenty-four counts of Class A misdemeanor neglect of a vertebrate animal. Crum raises one issue for our review: does his sentence warrant revision under Indiana Appellate Rule 7(B)? Concluding Crum's sentence is inappropriate in light of the nature of his offense, we reverse and remand with instructions to revise Crum's sentence to four years with one year suspended to probation.

## Facts and Procedural History

[2] On a hot summer day in July 2021, Crum's neighbor called 9-1-1 to report the "smell of rotting flesh" coming from Crum's property. *Tr. Vol. 2* at 158. Washington County Animal Control Officer Michael Wimmer arrived at the scene and began speaking with Crum. As the two men spoke, several of Crum's dogs began to surround Crum. Officer Wimmer noticed "almost all of [the dogs] were dangerously underweight" such that he could "see a lot of bones sticking out where you shouldn't be able to see them." *Id.* at 162. Crum expressed concern for his dogs' health, noting he had "noticed blood in their stool" and "dried hairballs that they were coughing up." *Id.* Crum explained he could not find anybody to take his dogs to get veterinary care. Officer Wimmer asked if he could look around Crum's property, and Crum agreed.

[3] On Crum's property, Officer Wimmer located two metal semi-trailers and six kennels. Upon opening one of the trailer doors, Officer Wimmer found twelve dogs inside. The trailer contained no food or water and had minimal ventilation. Plus, the smell of ammonia emanating from dog waste scattered throughout the trailer was so strong it stung Officer Wimmer's eyes and nose. There were also some dogs in the kennels, although only one kennel had water available. None of the kennels had food. Police also discovered two nonoperational refrigerators on Crum's property. One fridge contained several bags of chicken leg quarters. The stench from improperly preserved meat was "rank." *Id.* at 232. Police seized twenty-four dogs from Crum's property and took them to the local animal shelter.

[4] Dr. Jodi Lovejoy, a District Field Veterinarian for the Indiana State Board of Animal Health, examined Crum's dogs and their living conditions. Using the Purina Dog Body Scoring System,[1] Dr. Lovejoy scored twenty-two of Crum's dogs within the range signifying "severe malnutrition." *Tr. Vol. 3* at 36; *Ex. Vol. 4* at 54. All twenty-four dogs fell below the ideal range. But after being fed dry food and provided adequate water for about three weeks in the animal shelter, each dog had "improved in body conditions" without needing further medical treatment. *Tr. Vol. 3* at 76. Dr. Lovejoy explained the dogs' prior "poor body

---

[1] Scores in this system range from 1 to 9, with 4 and 5 comprising the "ideal" range. *Ex. Vol. 4* at 85. Dogs on the lower end of the scale—1 to 3—are considered "too thin," while dogs scoring 6 to 9 are deemed "too heavy." *Id.*

condition" was most likely caused by Crum "not providing adequate food to meet the dogs['] needs for an extended period of time." *Id.*

[5] The State charged Crum with twenty-four counts of Class A misdemeanor neglect of a vertebrate animal.[2] Following a jury trial—which Crum did not attend—Crum was found guilty as charged. The trial court sentenced Crum to an aggregate twelve-year sentence, with four years suspended to probation.[3]

## Crum's Sentence Warrants 7(B) Revision

[6] Crum asks us to revise his sentence. The Indiana Constitution authorizes this Court to review and revise a trial court's sentencing decision as provided by rule. Ind. Const. art. 7, § 6. Indiana Appellate Rule 7(B) provides we may revise a sentence authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The principal role of appellate review is to leaven the outliers, not to achieve a perceived correct sentence in each case. *Conley v. State*, 183 N.E.3d 276, 288 (Ind. 2022). Therefore, "we reserve our 7(B) authority for exceptional cases." *Faith v. State*, 131 N.E.3d 158, 160 (Ind. 2019) (per curiam).

---

[2] The State originally charged Crum with twenty-four counts of Class A misdemeanor cruelty to an animal.

[3] Crum's twelve-year aggregate sentence is comprised of twenty-four six-month sentences to be served consecutively. *See* Ind. Code § 35-50-3-2 (1977) (providing a "person who commits a Class A misdemeanor shall be imprisoned for a fixed term of not more than one (1) year"). Two months of each six-month sentence was suspended to probation.

[7] "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The two prongs of 7(B) review are "separate inquiries to ultimately be balanced in determining whether a sentence is inappropriate." *Lane v. State*, 232 N.E.3d 119, 126 (Ind. 2024) (quoting *Conner v. State*, 58 N.E.3d 215, 218 (Ind. Ct. App. 2016)). "[T]o the extent the evidence on one prong militates against relief, a claim based on the other prong must be all the stronger to justify relief." *Id.* at 127.

[8] The question "is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate." *Helsley v. State*, 43 N.E.3d 225, 228 (Ind. 2015) (quoting *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008)) (emphasis omitted). Whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020) (quoting *Cardwell*, 895 N.E.2d at 1224). The defendant bears the burden of persuading us a revised sentence is warranted. *See Hall v. State*, 177 N.E.3d 1183, 1197 (Ind. 2021).

### A. Crum's Character

We begin with Crum's character, which we analyze by considering a wide range of facts, such as Crum's criminal history, background, past rehabilitative efforts, and remorse. *See Harris v. State*, 165 N.E.3d 91, 100 (Ind. 2021). Crum argues his character warrants revising his sentence due to "his willingness to confront and beat addiction, his strong family support, and his kindness and generosity" to friends. *Appellant's Br.* at 14. But there is more to his story. For example, Crum has a history of criminal behavior, including two felony convictions for possession of a controlled substance and felony convictions for battery on a public safety official and resisting law enforcement. Crum's criminal history demonstrates his clear and continuing disregard for the rule of law, which reflects poorly on his character. *See Zamilpa v. State*, 229 N.E.3d 1079, 1090 (Ind. Ct. App. 2024) (explaining even a minor criminal history reflects poorly on a defendant's character).

Moreover, Crum has repeatedly violated the terms of his probation and chose not to attend his trial in this case. These facts also signify poor character. At bottom, Crum has not shown substantial virtuous traits or persistent examples of good character that would warrant revising his sentence. Therefore, he must make an even stronger showing regarding the nature of his offense to prevail. *See Lane*, 232 N.E.3d at 127.

### B. The Nature of Crum's Offenses

Turning to the nature of his offenses, Crum claims that, from a sentencing perspective, had he "lined up all of his dogs and hacked off their legs or doused them all in gasoline and set them on fire, he would have received a less harsh sentence than he did here."[4] *Appellant's Br.* at 16. In Crum's view, the inapplicability of the consecutive sentencing statute (Indiana Code Section 35-50-1-2) to his misdemeanor offenses has caused an "unjust and absurd result." *Id.*

Just recently in *Lane*, our Supreme Court analyzed an Appellate Rule 7(B) claim in the context of a defendant facing a lengthy prison sentence for multiple misdemeanor offenses. In doing so, the *Lane* Court drew two main sentence-review principles consistent with the purposes of Indiana's recent criminal justice system reforms. "First, sentencing courts should consider the full range of available options, including community-based rehabilitation programs, for defendants who commit low-level offenses but pose little continuing danger to others." *Lane*, 232 N.E.3d at 123. And "[s]econd, to ensure public safety, courts should consider extended jail sentences for low-level offenders with a history of violence who pose a continuing threat to others." *Id.* Put another

---

[4] Crum's contention is based on the premise that had he committed these hypothetical acts, he would have committed Level 6 felony abuse of a vertebrate animal. I.C. § 35-46-3-12(c). Crum then claims Indiana Code Section 35-50-1-2(d)(1) would cap his total of consecutive terms of imprisonment at four years. *See* I.C. § 35-50-1-2(d)(1) (explaining if the most serious crime for which a defendant is charged is a Level 6 felony for offenses arising out of an episode of criminal conduct, the total of consecutive terms of imprisonment may not exceed four years). Thus, Crum claims the result is "unjust and absurd" because he was convicted of Class A misdemeanor offenses but received a sentence eight years longer than he could have received if he had committed Level 6 felony offenses.

way, trial courts should distinguish between offenders the community is "mad at" and those the community is "afraid of" when considering sentencing options. *Id.* at 125 (noting the "mad at" and "afraid of" dichotomy also "influences [an appellate court's] approach to sentence review").

[13]     For example, in *Lane*, our Supreme Court affirmed a defendant's aggregate, fully-executed 3,000-day sentence for ten counts of Class A misdemeanor invasion of privacy—one for each letter Lane sent over an 18-month period to his ex-wife while imprisoned for Level 6 felony domestic battery resulting in moderate bodily injury to her. *Id.* at 121. Lane's sentence did not warrant revision, in part because he posed a continuing danger of restarting a cycle of physical and emotional abuse toward his ex-wife. *See id.* at 127. In other words, Lane was an offender the community was "afraid of" and the Court deferred to the trial court's assessment that Lane was too dangerous to receive anything but a lengthy executed sentence.

[14]     But Crum's offenses are unlike those in *Lane*. When seized, all twenty-four of Crum's dogs were below the ideal weight range. And all but two dogs were severely malnourished. After receiving adequate food and water, however, each dog "improved in body conditions" without needing further medical treatment. *Tr. Vol. 3* at 76. Moreover, Crum received one count of Class A misdemeanor neglect of a vertebrate animal related to each of his two-dozen dogs. Therefore, unlike the defendant in *Lane*, Crum did not perpetuate his offenses against the same victim, let alone repeatedly over a span of one and one-half years. In fact, the trial court found as a mitigator that Crum's offense

"occurred under circumstances that are not likely to occur again," even though the trial court gave this little weight. *Id.* at 201. All this to say, Crum is more properly considered a low-level offender the community is "mad at," not "afraid of."

[15] Without doubt, Crum kept his dogs in abhorrent conditions. And his dogs physically suffered as a result. But, in our view, Crum's twelve-year aggregate sentence is an outlier and does not embody the principles expounded in *Lane*. *See Lane*, 232 N.E.3d at 130 ("[T]he essence of today's criminal-justice system in Indiana is to distinguish dangerous, violent offenders from the rest and to provide for sentences that reflect all the pertinent circumstances."); *see also Conley*, 183 N.E.3d at 288 (noting the "principal role of 7(B) review is to leaven the outliers"). As Crum contends, had he been charged with multiple Level 6 felony offenses related to his mistreatment of his dogs, Indiana Code Section 35-50-1-2(d)(1) would have limited the total of his consecutive terms of imprisonment to four years because his convictions would have arisen out of an episode of criminal conduct.[5] This further differentiates Crum's offenses from those in *Lane* which were separate and distinct offenses repeated over an 18-

---

[5] For purposes of Indiana Code Section 35-50-1-2, an "episode of criminal conduct" means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b); see *Fix v. State*, 186 N.E.3d 1134, 1144 (Ind. 2022) (focusing the "single episode" analysis on "the simultaneous and contemporaneous nature of the crimes, if any"). Plus, the exception to subsection (d)'s limits for crimes of violence would not apply because abuse of a vertebrate animal is not considered a crime of violence. *See* I.C. §§ 35-50-1-2(a), (c).

month span and also supports our conclusion Crum's sentence is an outlier warranting 7(B) revision.

[16] In sum, Crum's character does not warrant any revision, but he made a strong showing the nature of his offense does. Crum's twelve-year aggregate sentence for twenty-four counts of Class A misdemeanor neglect of a vertebrate animal is an outlier. Accordingly, we reduce Crum's sentence to four years with one year suspended to probation.[6]

## Conclusion

[17] Crum's twelve-year aggregate sentence is inappropriate in light of the nature of his offense. We therefore exercise our authority under Appellate Rule 7(B) and reduce Crum's sentence to an aggregate term of four years.

[18] Reversed and remanded.

Bailey, J., and Vaidik, J., concur.

ATTORNEY FOR APPELLANT

---

[6] In fashioning Crum's revised sentence, we are mindful that for sentencing there is no one "right answer in any given case." *State v. Stidham*, 157 N.E.3d 1185, 1197 (Ind. 2020). We conclude Crum's offenses warrant a four-year-aggregate sentence based on the statutory cap applicable had Crum been charged with Level 6 felony offenses arising out of a single episode of criminal conduct—*i.e.*, more serious offenses. *See* I.C. § 35-50-1-2(d)(1). Moreover, suspending one year of Crum's four-year sentence to probation resembles approximately the composition of Crum's sentence imposed by the trial court. In this respect, we defer to the judgment of the trial court.

Victoria Bailey Casanova
Casanova Legal Services
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Kelly A. Loy
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana